Mr. Justice Swayne
delivered the opinion of the court:
This is an appeal from'the Court of Claims.
The result of the case here depends upon the construction to be given to the fourth article of the contract between the parties.
The contract was for the transportation of Army supplies in the West.
Bulkley agreed to transport any quantity of such supplies, between 100,000 and 10,000,000 pounds, that might be turned over to him for that purpose, from April to September, 1865. The fourth article provided, “ that in order that the said Henry S. Bulkley shall be in readiness to meet the demands that shall be made upon him for transportation under this contract and agreement, due notice shall be given him or his agent of the quantity and kind of .stores to bo transported at any one time, at what points the stores will be ready for delivery to him, and the place of their destination, subject to such changes as shall be decided upon while in transitu, as herein provided for, that is to say,” &c. The period of the notice before the time of performance in each case was then prescribed, being *86 twenty-five days for 300,000 pounds, and increasing according to tbe increased quantity of the stores specified. On the 4th of June, 1865, an officer of the Government advised Bulkley that transportation from Fort Leavenworth to the extent of 1,700,000 pounds was needed, and inquired whether, as he had been notified already to the extent of his contract, he was prepared to transport that additional quantity of freight. He assented. This enlarged so far the maximum quantity covered by the contract. .•
The Court of Claims found that of the freights notified under the fourth article, the United States did not need transportation for 1,690,074 pounds, and to that extent, therefore, did not offer any to him.
It was further found that Bulkley, on his part, was prepared and ready to transport all such freights, and so notified the proper officers of the United States. The court held, as a conclusion of law, that he could not recover the profits he would have made had the freights withheld been furnished to him, but that, the United States having thrown upon him needless expense by requiring him to make ready for the transportation of freights which they did not in the end require to be transported, he was entitled to recover for the expense to which he was. thus subjected.
Bulkley, insisting upon profits as the measure of his damages, declined to furnish proof of the expense incurred.
The Court of Claims thereupon dismissed his petition, and he has removed the case to this court for review. Here the claim for profits, as the rule of compensation, is renewed. It is insisted that every notice was a specific agreement, within the original contract, on the part of the Government, that the freight specified should be furnished, and that the United States are liable accordingly.
We think this theory cannot be maintained, and that the Court of Claims came to the right conclusion.
Outside of the fourth article there is nothing in the contract which gives the slightest support to the claim. The other stipulations are that Bulkley should transport, in the manner provided and within the times mentioned, all the freights between the maximum and .minimum quantities specified that should be offered to him.
If none had been offered, lie would certainly have had no *87 claim upon the Government for anything. The fourth article provides, that in order that he might be in readiness to meet the demands of the Government, due notice should be given him of the time, place, quantity, and kind of stores to be transported and their place of destination. There is still no agreement to furnish such freights, or any freights. The effect of the notice was to signify a purpose on the part of the Government, and that purpose was liable to be changed at any time before it was executed. Indeed, it is expressly stipulated that it might be altered while the stores were in transitu, and there is no limit prescribed as to the extent or character of the changes that might be made. If the day after the transportation commenced the wagons had been ordered back to their place of departure, unloaded, and the transportation abandoned, there would have been no breach of the contract. The change would have been within its letter and meaning. A multo fortiori might such a change be made and carried out before the transportation began. If it were intended that after the notices were given the Government should be bound as claimed, that intent should have been expressed in the contract. It is neither expressed nor implied. It was doubtless known to the officer who entered into the contract on behalf of the United States that in the exigiencies of the public service more or less transportation, or none, might be required at any given time or place, contrary to what had been anticipated and intended down to the last moment. Hence, while it was stipulated that actual transportation should be paid for at the rates specified, an unfettered discretion was reserved to the Government as to everything beyond that point. It is to be presumed that with this view the contract was framed as we find it. It commits the Government to nothing but to pay for service rendered. It is partly printed and partly written, and is according to the formula used by the Government in all such cases. In making ready to meet the requirements of the notices, Bulkley was subjected to the loss of time, to trouble, and expense. He is entitled to be paid accordingly. Such is the implication of the contract, and what is implied in a contract, deed, will, or statute is as effectual as what is expressed. (United States v. Babbit, 1 Black, 61.) Human affairs are largely conducted upon the principle of implications.
In relation to the large amount of stores transported, there *88 is no complaint. It is to be presumed that everything in relation to them has been satisfactorily adjusted. This claim is confined to stores not transported.
Although we concur entirely with the Court of Claims in their view of the case, yet as the appellant acted in that court upon a mistaken notion of his rights, the judgment will be reversed and the cause remanded, that he may have another opportunity to produce the proof which he declined before to give. If he shall again refuse, the petition must be finally dismissed.